**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MATTHEW D. MELTON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-CV-2854-K-BH** |
| | § | |
| **WAXAHACHIE POLICE** | § | |
| **DEPARTMENT and DETECTIVE** | § | |
| **ALBERT MARTINEZ #133/#161,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge[1]** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, *Plaintiff's Motion to Remand*, filed December 6, 2021 (doc. 8), should be **DENIED**, and *Defendants City of Waxahachie, Texas and Detective Albert Martinez's Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended Petition #1*, filed December 17, 2021 (doc. 14), should be **GRANTED**. The plaintiff's motion for leave to amend included in his response, filed on January 7, 2022 (doc. 17), is **GRANTED**.

## I.   BACKGROUND

Matthew D. Melton (Plaintiff) sues the City of Waxahachie (City), the Waxahachie Police Department (WPD), and a detective (Detective), alleging police misconduct and violation of his constitutional rights. (doc. 10 at 1, 18-29.)[2]

According to the petition he filed against WPD and Detective in the 40th District Court of Ellis County, Texas, on October 7, 2021, Plaintiff's wife (Wife) called WPD on May 12,

---

[1] By *Special Order 3-251*, this *pro se* case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

2017, and reported that he had thrown items, including a fire extinguisher, in her direction. (doc. 1-3 at 7.) A police report noted that although she claimed to have leg pain, Wife had no visible bruises, and she refused a hospital examination. (*Id.* at 6-7.)

In a phone call around May 16, 2017, Detective invited Plaintiff to give an interview, but he declined because his attorney could not be present. (doc. 10 at 5, 7, 25-26.) Later, Detective stated in a police report that Plaintiff "refused" to "give [Detective] [Plaintiff's] side of the story"; Detective also allegedly "modified" an audio recording of their phone call.[3] (*Id.*) Around that time, Plaintiff told Detective that Wife had falsely accused him of domestic violence years earlier[4] and now had a motive to lie because she was seeking a divorce. (doc. 1-3 at 32; doc. 10 at 5, 25.) Detective did not "interview[]" Wife or record his interaction with her, however, and instead indicated that the case against Plaintiff would proceed. (doc. 10 at 9.)

Plaintiff was subsequently arrested for "Assault Causing Bodily Injury – Family Violence." (*Id.* at 5-7, 20.) On June 10, 2017, Wife emailed Detective that she had bailed him out of jail using his own money to keep him happy. (*Id.* at 25.)  On June 23, 2017, she signed an Affidavit of Non-Prosecution (2017 Affidavit), declining to pursue charges against him and asking for his prosecution to be "withdrawn." (doc. 1-3 at 33; doc. 10 at 6.) Plaintiff alleges "[d]isposition" of the criminal case on October 8, 2019, without further explanation. Almost two years later, on October 1, 2021, Plaintiff received the "modified" WPD audio files. (doc. 17 at 3.)

On October 7, 2021, Plaintiff filed this *pro se* action against WPD and Detective in the

---

[3] Plaintiff does not further explain how the audio recording was "modified"; he only generally alleges that he was not provided the "original" audio recording of his phone call with Detective. (*See* doc. 10 at 9.)

[4] After she called WPD to accuse Plaintiff of domestic violence in 2008, Wife filed an Affidavit of Fact (2008 Affidavit) stating that "there was no threat of violence" when she called the police. (*Id.* at 6.)

40th District Court of Ellis County, Texas, alleging violation of the following constitutional rights:

      4th – Government Seizure leading to injury.
      5th – The right to not self incriminate, and having an attorney present during questioning.
      6th – Denying the right to counsel.
      14th – Deprived of liberty and property, without due process of law[.]

(doc. 1-3 at 6.) He also asserted various state law claims.  (*Id.* at 16-26.) After Defendants removed the action on grounds of federal question jurisdiction under 28 U.S.C. § 1331, on December 6, 2021, Plaintiff amended his petition to add the City as a defendant. (*See* doc. 1; doc. 10.)  In addition to reasserting his federal civil rights claims, he lists his state law claims in his amended complaint as claims for negligence, gross negligence, police misconduct, official oppression, dereliction of duty, "deprecation of rights" under the Texas Bill of Rights, and bias. (*See* doc. 8 at 1; *see also* doc. 10 at 3-13, 16-17,18-29.)  He seeks damages for loss of consortium with his wife and children, loss of reputation, pain and suffering, loss of business revenue and potential income, past legal expenses, and punitive damages.  (*See* doc. 10 at 31.)

## II.      MOTION TO REMAND

    Plaintiff contends that removal was improper because only his claims based on federal civil rights violations should have been removed, and he moves to remand his state law claims. (*See* doc. 8.)

    Any civil action brought in state court may be removed to federal court if the district court has original jurisdiction over that action. 28 U.S.C. § 1441(a). A district court's original jurisdiction is of two types: federal question jurisdiction and diversity jurisdiction. *Id.* §§ 1331, 1332. Federal question jurisdiction exists in all civil actions arising under the Constitution, laws, or treaties of the United States. *Id.* § 1331. Diversity jurisdiction exists in all civil actions where

the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and there is diversity of citizenship between the parties. *Id.* § 1332(a). When a civil action is removed solely under § 1441(a), "all defendants who have been properly joined and served must join in or consent to the removal of the action." *Id.* at § 1446(b)(2).

"Section 1447(c) provides two grounds for remand: (1) a defect in removal procedure and (2) lack of subject matter jurisdiction." *Burks v. Amerada Hess Corp.*, 8 F.3d 301, 303 (5th Cir. 1993). To determine whether it has federal jurisdiction over the removed case, the court must "consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)). "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Id.* "This burden extends not only to demonstrating a jurisdictional basis for removal, but also necessary compliance with the requirements of the removal statute." *Fraire v. Budget Rent-A-Car of El Paso, Inc.*, No. EP-10-CV-338-PRM, 2011 WL 3678584, at *2 (W.D. Tex. Mar. 31, 2011) (citing *Burks*, 8 F.3d at 303). If there is "any doubt about the propriety of removal, [it] must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

"[W]hen a court performs its duty to verify that it has jurisdiction, it may be required to survey the entire record, including the defendant's pleadings, and base its ruling on the complaint, on undisputed facts, and on its resolution of disputed facts." *Aquafaith Shipping, Ltd. v. Jarillas*, 963 F.2d 806, 808 (5th Cir. 1992) (citation omitted); *see also Smith v. Estate of Wagner*, No. CIV A H 06-02629, 2006 WL 2729282, at *3 (S.D. Tex. Sept. 25, 2006)

(explaining that a "court ... [may] consider the defendant's notice of removal, other pleadings, and the record as of the time of removal if necessary to shed light on the plaintiff's pleadings"). "The purpose of this careful survey, however, is to shed light on the plaintiff's pleadings. The court's focus is on the plaintiff's pleadings, not the defendant's." *Aquafaith*, 963 F.2d at 808.

## A.  <u>Federal Question Jurisdiction</u>

Defendants contend that "federal district courts have original jurisdiction" over this case because Plaintiff asserts that Defendants "violated his Constitutional rights." (doc. 1 at 2.)

Federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's well-pleaded complaint. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). This requires "a well-pleaded complaint [to] establish[ ] either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Singh v. Duan Morris LLP*, 538 F.3d 334, 337-38 (5th Cir. 2008). To determine whether resolution of a substantial question of federal law is necessary, courts must determine whether "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Id.* at 338.

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citation omitted)); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Although Plaintiff does not oppose removal of his federal claims (doc. 8 at

2), the Court must *sua sponte* determine whether it has jurisdiction over this removed case, *see Hertz Corp.*, 559 U.S. at 94.

In addition to his enumerated state law claims, Plaintiff's original petition expressly alleges violations of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution based on his arrest and the domestic violence charges against him. (doc. 1-3 at 6.) Plaintiff concedes in his motion to remand that a federal cause of action was present on the face of his well-pleaded complaint at the time of removal. (*See* doc. 8 at 3.) Federal question jurisdiction existed over this action at the time of removal. *See Tobacco & Wine, Inc. v. Cnty. of Dallas*, No. 3:20-CV-939-L, 456 F. Supp. 3d 788, 792 (N.D. Tex. 2020) (finding federal question jurisdiction because the plaintiff's pleadings at the time of removal specifically referenced the Fifth and Fourteenth Amendments in a paragraph separate from his state claims); *White v. City of Colorado City*, No. 1:15-CV-83-P-BL, 2015 WL 4930983, at *2 (N.D. Tex. July 15, 2015), *report and recommendation adopted sub nom. White v. Colorado City, Tx.*, No. 1:15-CV-0083-P-BL, 2015 WL 4934275 (N.D. Tex. Aug. 17, 2015) (finding federal question jurisdiction because plaintiff's claims—e.g., that the police "falsely arrested him", were "purposely NOT investigating" the crimes he reported, and had violated his "14th Amendment equal protection rights"—were typically brought under 42 U.S.C. § 1983). Removal of the action was not improper.

## B. **Supplemental Jurisdiction**

Plaintiff contends that his state law claims should be remanded because they are not preempted by his federal claims and do not raise a substantial federal issue. (*See* doc. 8 at 3.)

Under § 1367(a), federal courts have "supplemental jurisdiction over all other claims that

are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In essence, § 1367(a) grants the courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:15-CV-1162-D, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1996).

Under § 1367(c), a court may also decline to exercise supplemental jurisdiction over a state claim if:

(1)  the claim raises a novel or complex issue of law,
(2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3)  the district court has dismissed all claims over which it has original jurisdiction, or
(4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1376(c). When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3). This rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiffs right."). In exercising this discretion, courts should consider

issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257. "[N]o single factor is dispositive", however. *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

Here, the statutory factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims because they arise from the same "common nucleus of operative facts" as his federal claims. *See McKee*, 2007 WL 2381246, at *4. He specifically alleges that his constitutional rights were violated through the alleged violations of state law, so consideration of his federal claims requires review of his state law claims. Requiring him to litigate his claims in state court would "necessarily require consideration by two distinct courts of the same operative fact[s]" and the "same legal issues." *See id.* Additionally, his claims do not raise a novel or complex issue of law. *See* 28 U.S.C. § 1376(c). Given his failure to state a claim for relief, as discussed below, or to otherwise show that a genuine controversy exists between the parties, allowing him to file suit in state court would impose unnecessary expenses on the court system and the parties involved. *See McCall v. Peters*, No. CIV.A. 3:00-CV-2247-D, 2003 WL 21488211, at *12 (N.D. Tex. May 12, 2003), *aff'd by* 108 F. App'x 862 (5th Cir. 2004) (noting that in determining whether to exercise pendent or supplemental jurisdiction, the court may consider factors such as the amount of time and resources spent adjudicating the case). Because all three factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims, the Court should exercise supplemental jurisdiction and review the state law claims on the merits.

Plaintiff's motion to remand, or to remand only his state law claims, should be denied.

### III.   MOTION TO DISMISS

Defendants contend Plaintiff's first amended petition should be dismissed under Rule

12(b)(6) for failure to state a claim. (doc. 15 at 1-2.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12 (b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across

9

the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.  It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils.*, Inc., 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). However, "[i]f ... matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Accordingly, documents falling in these three categories may be

properly considered without converting the motion to dismiss into a motion for summary judgment.

Plaintiff did not attach documents to his amended petition, but it specifically referenced the exhibits attached to his original state court petition, i.e., copies of Wife's 2008 and 2017 affidavits. (*See* doc. 1-3 at 32-33; doc. 10 at 6-7.) Because the amended petition specifically referred to these documents attached to his original petition and they are central to his claims, they are considered part of the pleadings. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205. Additionally, Plaintiff's response to Defendant's motion contains new factual new allegations concerning the date that his state court criminal case was resolved and the date that he received discovery. (*See* doc. 18 at 3-4.) Because his *pro se* filing is properly construed as a motion to amend and **GRANTED**,[5] his new allegations are also considered part of the pleadings. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205. It is therefore unnecessary to treat Defendant's motion to dismiss as a motion for summary judgment.

## IV.    STATUTE OF LIMITATIONS

Defendants move to dismiss all of Plaintiff's claims as untimely. (doc. 15 at 3.) Although

---

[5] Because Plaintiff is proceeding *pro se*, his pleadings are to be provided "a liberal construction." *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012). As a general rule, claims and allegations that are not raised in the complaint, but raised for the first time in a response to a motion to dismiss are not properly before the court. *See Hearn v. Deutsche Bank Nat'l Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, *4 n. 3 (N.D. Tex. Aug. 15, 2014); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990); *see also Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (explaining that a claim raised for the first time in a response to a motion for summary judgment is not properly before the court). Nevertheless, the Fifth Circuit has held that courts should construe new allegations and theories in responses to dispositive motions as motions to amend. *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss in which plaintiff first alleged claim should be treated as a motion to amend); *see also Debowale v. U.S. Inc.*, 62 F.3d 395 (5th Cir. 1995) (per curiam) ("The district court should have construed [the plaintiff's] *Bivens* claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it"). Plaintiff's claims and allegations in his response to Defendants' motions to dismiss are therefore construed as a motion to amend, the motion is granted, and any new claims and allegations are considered.

the statute of limitations is an affirmative defense, a defendant may move for dismissal under Rule 12(b)(6) if the facts giving rise to this defense "appear[ ] on the face of the complaint." *White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (citations omitted); *see Hall v. Hodgkins*, 305 F. App'x 224, 227-28 (5th Cir. 2008) (holding dismissal under Rule 12(b)(6) is proper if a successful affirmative defense appears "based on the facts pleaded and judicially noticed"); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) ("Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings."). Here, the amended complaint specifically alleges when the conduct underlying Plaintiff's claims occurred. (*See* doc. 10 at 18-29.)

## A. <u>Federal Claims</u>

Plaintiff's claims for violation of his constitutional rights arise under 42 U.S.C. § 1983. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a § 1983 claim, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

### 1. *Fourth Amendment*

Plaintiff claims that his Fourth Amendment rights were violated when "[Detective]

allowed [him] to be arrested without probable cause and to then remain out on bail for close to 3 years." (doc. 10 at 20.) He appears to claim that Detective engaged in misconduct—falsifying testimony in a supplemental police report and "modifying" an audio recording—and conducted a flawed investigation that led to his arrest pursuant to a warrant. (*See id.* at 5-13; doc. 1-3 at 6.)

Federal courts look to the law of the forum state to determine the length of the statute of limitations applicable in § 1983 cases. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The general statute of limitations governing personal injuries in the forum state provides the applicable limitations period. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). Texas has a two-year statute of limitations for personal injury claims, so Plaintiff had two years from the date his claims accrued to file suit. *Id.*; *accord Hatchet v. Nettles*, 201 F.3d 651, 653 (5th Cir. 2000).

While state law determines the length of the limitations period, federal law determines the accrual date. *Wallace*, 549 U.S. at 388; *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008). "[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388. Generally, a claim accrues when the plaintiff has "a complete and present cause of action", or "when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citation and internal quotation marks omitted).

> "Under federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" A plaintiff's awareness encompasses two elements: "(1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." A plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim. Actual knowledge is not required "if the circumstances would lead a reasonable person to investigate further."

*Piotrowski*, 237 F.3d at 576 (citations omitted); *Walker*, 550 F.3d at 414. Further, "[i]n defining the contours and prerequisites of a § 1983 claim, including its rule of accrual, courts are to look

13

first to the common law of torts." *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 137 S. Ct. 911, 920 (2017).

Defendants argue that Plaintiff's Fourth Amendment false arrest claim is untimely under *Wallace*. In *Wallace*, an arrestee whose conviction was set aside after the state appellate court found that he had been arrested without probable cause sued under §1983 for false arrest. *See* 549 U.S. at 386-87. The Supreme Court held that a §1983 claim based on "detention *without legal process*" accrued once the detainee was held pursuant to legal process, "when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* at 389 (*emphasis original*) (citing W. D. Dobbs, LAW OF TORTS, § 39, p. 74, n. 2 (2001); W. Keeton, D. Dobbs, R. Keeton & D. Owen, PROSSER AND KEETON ON LAW OF TORTS § 119, p. 888 (5th ed. 1984); H. Stephens, ACTIONS FOR MALICIOUS PROSECUTION 120-124 (1888)). It analogized the plaintiff's claim to the common law torts of false arrest or false imprisonment, which had a "distinctive" accrual date, i.e., when the alleged false imprisonment ends and the detainee is no longer held without legal process.  *Id.*

On the other hand, the Fifth Circuit has held that the accrual date for the common law tort of malicious prosecution should be used "[w]here the plaintiff complains about 'detention accompanied, not by the absence of legal process, but by wrongful institution of legal process…'" *Fusilier v. Zaunbrecher*, 806 F. App'x 280, 282 (5th Cir. 2020) (citing *Wallace*, 549 U.S. at 390).  In *Winfrey v. Rogers*, 901 F.3d 483, 492-93 (5th Cir. 2018), the plaintiff alleged that he had (1) been arrested pursuant to a warrant, (2) the warrant issued through the normal legal process, and (3) the warrant application contained "numerous material omissions and misstatements." *Winfrey*, 901 F.3d at 493. The Fifth Circuit found that these allegations reflected

14

the "wrongful institution of legal process." *Id.* "And since his claim was best analogized to common law malicious prosecution, his claim 'accrued when his criminal proceedings ended in his favor.'" *Fusilier*, 806 F. App'x at 282 (citing *Winfrey*, 901 F.3d at 493; *Whittington v. Maxwell*, F. App'x 450, 457-58 (5th Cir. 2011)).

Here, Plaintiff appears to claim that his Fourth Amendment rights were violated when he was arrested pursuant to an arrest warrant that resulted from a flawed investigation rife with misconduct. (*See* doc. 10 at 7) ("Neither Detective Martinez nor Detective Gray had sufficient probable cause without knowingly and intentionally lying or using other than credible witnesses to apply for arrest warrants, and further injuring the Plaintiff by wrongfully arresting him."). Because he claims that he was arrested pursuant to a warrant obtained without probable cause, for limitations purposes, his claim is more like the common law malicious prosecution tort than the false imprisonment tort. *See Winfrey*, 901 F.3d at 492-93; *see also Kimble v. Moore*, CIVIL ACTION NO. 20-708-JWD-RLB, 2022 WL 636090, at \*4 (M.D. La. Jan. 26, 2022), *rec. accepted* 2022 WL 628538 (M.D. La. Mar. 3, 2022) ("Like the plaintiff in *Winfrey*, the plaintiff's claim is more like the tort of malicious prosecution because the plaintiff alleges he was arrested through wrongful institution of legal process—an unlawful arrest pursuant to a warrant, issued through the normal legal process, that is alleged to contain numerous material omissions and misstatements, rather than false imprisonment—detention with no legal process, as the circumstances considered in *Wallace*."); *Vanburen v. Spoon*, CIVIL ACTION NO. 19-0453, 2019 WL 2063523, at \*4 (W.D. La. May 2, 2019), *rec. accepted* 2019 WL 20162528 (W.D. La. May 9, 2019) (same). Moreover, any confusion as to the nature of the claim at this stage in the proceedings should be resolved in Plaintiff's favor because a 12(b)(6) dismissal

based on the statute of limitations is only warranted when that affirmative defense "clearly appear[s] on the face of [the plaintiff's] complaint." *Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 775 n.3 (5th Cir. 1997) (citations omitted). Accordingly, Plaintiff's Fourth Amendment claim accrued when the criminal proceedings ended in his favor. *See Winfrey*, 901 F.3d at 493.

Because Plaintiff's criminal case was disposed of on October 8, 2019, his Fourth Amendment claim, originally filed in state court on October 7, 2021, is timely.

2.    *Due Process and Equal Protection*

Under the most liberal construction of his pleadings, Plaintiff claims that Defendants violated his rights under the Fifth and Fourteenth Amendments to equal protection and due process by (1) denying his right under *Miranda v. Arizona*, 384 U.S. 436 (1966), to "have counsel present during questioning" (doc. 10 at 27); (2) treating him differently from Anna Melton and Detective who committed illegal acts but were not arrested (*id.* at 27-28); (3) fabricating or tampering with evidence (*id*. at 23); (4) failing to adequately investigate (*id.*); (5) not disclosing favorable evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) (*id.* at 10); and (6) violating provisions of the Texas Penal Code. (*id.* at 28.)

A § 1983 equal protection claim accrues "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987), *cert. denied*, 507 U.S. 914 (1993). Here, Plaintiff was aware of his injury when he was arrested, but his wife and Detective were not. As that occurred in 2017, his equal protection claim is time-barred. Likewise, his claims that his due process and equal protection rights were violated through purported violations of Texas penal

16

statutes also are time-barred because he was aware of his injury in 2017, when the alleged misconduct led to his arrest.

Due-process-fabrication-of-evidence and *Brady* claims accrue when the underlying criminal proceedings terminate in the defendant/plaintiff's favor. *See*, *e.g.*, *McDonough v. Smith*, 139 S. Ct. 2149, 2154-55 (2019) ("The statute of limitations for a fabricated-evidence claim like McDonough's does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor."); *Brown v. City of Houston*, 297 F. Supp.3d 748, 763 (S.D. Tex. 2017). As with Plaintiff's Fourth Amendment false arrest claim, the untimeliness of these claims is not evident from the pleadings.[6]

   3.    *Sixth Amendment*

Defendants argue that Plaintiff's claims that Defendants violated his Sixth Amendment right to counsel by "refus[ing] to allow him to be interviewed, [sic] if Plaintiff wanted his attorney present" and by violating the Texas Penal Code are time-barred. (doc. 15 at 7.)

A Sixth Amendment claim under § 1983 claim accrues when the plaintiff has sufficient information to know that he is injured). *See Whitaker v. McDonald*, No. 20-40569, 2022 WL 68972, at *2 (5th Cir. Jan. 6, 2022); *see also Mitchell v. Home*, 377 F.Supp.2d 361, 373 (S.D.N.Y. 2005) ("And for statute of limitations purposes, a § 1983 claim, including a Sixth Amendment fair trial claim, accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm.") (citations omitted).

Plaintiff does not provide the specific date when his Sixth Amendment rights were

---

[6] Because the remainder of Plaintiff's due process and equal protection claims, which appear to be premised upon violations of the Fifth Amendment, inadequate investigation, and *Miranda,* are not cognizable for the reasons discussed below, the timeliness of these claims is not addressed.

allegedly violated, but he was aware of the ultimate injury in 2017 when he was arrested. (doc. 10 at 4-6, 26.) Because Plaintiff did not file suit until October 2021, any Sixth Amendment claim is untimely.

### 4. Equitable Tolling

Plaintiff alleges that he did not receive "criminal discovery", i.e. the "modified" WPD audio recording, bearing on Defendants' alleged wrongdoing until 2021, and that "[u]ntil he received the criminal discovery, he was the only party to be unaware of the criminal actions that were present." (doc. 18 at 4.) His allegations may be liberally construed as seeking equitable tolling of the accrual date for any untimely claims.

The applicable limitations period may be equitably tolled in appropriate circumstances. *See Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998); *see also Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) (equitable tolling preserves a plaintiff's claims where strict application of the statute of limitations would be inequitable). "Because the Texas statute of limitations is borrowed in § 1983 cases, Texas' equitable tolling principles also control." *Id.* "[W]hen state statutes of limitation are borrowed, state tolling principles are to be be the 'primary guide' of the federal court. The federal court may disregard the state tolling rule only if it is inconsistent with federal policy." *FDIC v. Dawson*, 4 F.3d 1303, 1309 (5th Cir. 1993) (citations omitted). Federal law requires that litigants diligently pursue their actions before equitable tolling becomes available, however. *See Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999); *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989) ("equity is not intended for those who sleep on their rights"). Equitable tolling is appropriate in cases where a plaintiff is actively misled by the defendant or is prevented in some extraordinary way from asserting his rights. *See*

18

*Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996). "Texas courts sparingly apply equitable tolling and look, *inter alia*, to whether a plaintiff diligently pursued his rights; litigants may not use the doctrine to avoid the consequences of their own negligence. Federal courts also apply the doctrine sparingly." *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012) (per curiam) (citations and internal quotation marks omitted).

Texas equitable tolling principles include "tolling based on fraudulent concealment and the 'discovery rule.'" *King-White v. Humble Independent School Dist.*, 803 F.3d 754, 764 (5th Cir. 2015) (citing *Rotella*, 144 F.3d at 896-97). Fraudulent concealment tolls limitations "until the claimant, using reasonable diligence, discovered or should have discovered the injury." *See KPMG Peat Marwick v. Harrison Cnty. Hous. Fins. Corp.*, 988 S.W.2d 736, 750 (Tex. 1999). It has four elements: "(1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception." *See Holland v. Thompson*, 338 S.W.3d 586, 596 (Tex. App.—El Paso 2010, pet denied).

As discussed, Plaintiff was aware of the injury, i.e., his arrest, in 2017. He has not alleged, much less shown, some deception on the part of Defendants upon which he relied that prevented him from discovering his injury.  Nor has he alleged that he relied on any deception. Plaintiff has alleged no facts to support the four elements of fraudulent concealment.

"Under the federal 'discovery rule,' an action accrues when a plaintiff knows both the existence of an injury and the cause of an injury." *Kingham v. Pham*, 753 F. App'x 336, 337 (5th Cir. 2019) (per curiam) (citing *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 190 (5th Cir. 2011)). "When a plaintiff in a civil rights action knows or has reason to know

of an injury and the cause of that injury—such as arrest by police officers that he believes to be wrongful or use of force by prison guards that he believes to be excessive—the limitations period begins, and he acquires a duty to fully investigate his claims." *Roe v. Johnson County, Texas*, No. 3:18-cv-2497-B-BN, 2020 WL 6576784, at *7 (N.D. Tex. July 31, 2020), *rec. accepted in pertinent part,* 2020 WL 5542333 (N.D. Tex. Sept. 15, 2020).

In *Brown v. Walraven*, 9 F.3d 1546, 1993 WL 503349 (5th Cir. Nov. 17, 1993) (per curiam), the plaintiff alleged that he had been arrested on December 9, 1988, for selling drugs in October 1988. "The crux of his allegations of constitutional violations surrounding his arrest and prosecution [was] that the defendants did not have authority or jurisdiction to arrest him in 1988 because the Ark-La-Tex narcotics task force did not have authority to operate in Harrison County, Texas, in 1988. All of the allegations in his pleadings refer[red] to 1988." *Brown*, 1993 WL 503349, at *2. The Fifth Circuit affirmed the district court's finding that the action, filed in 1992, was time-barred:

> Brown argue[d] on appeal though that he was not aware of his cause of action at the time of arrest because he did not know at the time that the defendants were acting without jurisdiction or authorization. He contend[ed] that he did not have knowledge of any wrongful acts by the defendants until the date of the criminal trial, when testimony revealed their tainted authorization. This argument fails. We previously have rejected that the statute of limitations does not begin to run until the plaintiff learns that the defendant's conduct was wrongful. *Longoria v. City of Bay City, Tex.*, 779 F.2d 1136, 1139 (5th Cir. 1986). Brown knew that he was injured when he was arrested and prosecuted, and the statute of limitations began to run in 1988.

*Id.* at *2-3.

As in *Brown*, any discovery of evidence in 2021, even if it showed Defendants' conduct was wrongful, does not postpone the accrual date of Plaintiff's untimely claims because he was aware of the injury, i.e., his arrest, in 2017.

20

Equitable tolling does not save any of Plaintiff's time-barred claims.

## B.  **State Claims**

Defendants argue that to the extent that Plaintiff intends to assert state law claims for conspiracy, false arrest, and false imprisonment, those claims are time-barred. (doc. 15 at 3.)

Under Texas law, civil conspiracy, false arrest, and false imprisonment claims are subject to a two-year limitations period. *See Lazo Techs., Inc. v. Hewlett-Packard Co.*, No. 05-14-01060-CV, 2016 WL 80952, at *2 (Tex. App.—Dallas 2016, pet. denied) (citing Tex. Civ. Prac. & Rem. Code § 16.003(a)) (civil conspiracy); *Bennett v. State*, No. 05-99-01788-CV, 2001 WL 569749, at *3 (Tex. App.—Dallas 2001, no pet.) (false arrest and false imprisonment).

### 1.  *Civil Conspiracy*[7]

A claim for civil conspiracy accrues "when each underlying tort of the conspiracy damages the plaintiff", with separate limitations for each alleged tortious act. *See Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 144 (Tex. 2019) (citations omitted). Because a civil conspiracy claim is derivative of an underlying tort, the claim accrues when the underlying tort accrues. *See id.* "This also accords with the general rule that a cause of action accrues when a wrongful act causes an injury." *Id.* (citation omitted).

Here, Plaintiff's pleadings appear to allege that Defendants conspired with Ellis County, Wife, and an "unnamed third party" to "damage[]/injure[]" him by falsely arresting and detaining him. (doc. 10 at 29.)  His conspiracy claim accrues when the underlying false arrest and imprisonment claims accrue. *See Agar Corp., Inc.*, 580 S.W.3d at 144.

---

[7] Defendants allege that to the extent that Plaintiff raised a conspiracy claim under state law, it should also be dismissed for failure to state a claim on grounds that it is time-barred. (doc. 15 at 3 n.1.)

2. *False Arrest and False Imprisonment*

It is not clear that Plaintiff is pursuing a state-law false arrest or imprisonment claim because he implies that his arrest was pursuant to a warrant, and therefore based on the "wrongful institution of legal process", as opposed to "detention without legal process." *Wallace*, 549 U.S. at 389. To the extent that he is making a state-law false arrest or imprisonment claim, in addition to or *in lieu* of malicious prosecution claim, it is time-barred. A claim for false arrest and false imprisonment accrues when the detention ends. *See Roe v. United States*, 839 F. App'x 836, 845 (5th Cir. 2020) (holding that a claim for false imprisonment, i.e., "detention *without legal process*", accrues when the detention ends) (emphasis in original) (quoting *Wallace*, 549 U.S. at 388); *White v. Cole*, 880 S.W.2d 292, 295 (Tex. App.—Beaumont 1994, writ denied) (holding that the appellant's claims for "illegal arrest" and "malicious false imprisonment" accrued when he was no longer confined). Under Fifth Circuit law, making bail ends detention. *See Roe*, 839 F. App'x at 845 (holding that plaintiff's "false imprisonment ended once he was released on bond") (citing *Reed v. Edwards*, 487 F. App'x 904, 906 (5th Cir. 2012) ("a bond hearing constitutes legal process under *Wallace*")).

According to the face of his pleadings, Plaintiff's false arrest and imprisonment claims accrued when he made bail on June 10, 2017, and expired two years later, on June 10, 2019. *See Roe*, 839 F. App'x at 845; (doc. 10 at 5-7, 10-11, 13.) Because he filed this action in October 2021, more than two years after the limitations period expired, these claims are time-barred. *See Bennett*, 2001 WL 569749, at *3 (holding plaintiff's false arrest or imprisonment claims are time-barred because he filed them more than two years after they accrued).

Any claim that Plaintiff is entitled to equitable tolling fails because he did not receive

22

criminal discovery until 2021 fails for the same reasons as his federal claims. Under Texas law, the discovery rule only applies when an injury is both undiscoverable and objectively verifiable. *Computer Assocs. Int'l, Inv. v. Altai, Inc.*, 918 S.W.2d 453, 455-56 (Tex. 1996). The injury supporting a false arrest or imprisonment claim—an arrest or imprisonment without probable cause—is not undiscoverable. *See*, *e.g.*, *Vieyra v. Harris County*, *Texas*, Civil Action No. 10-CV-1412, 2010 WL 4791518, at *4-5 (S.D. Tex. Nov. 17, 2010) (refusing to apply Texas' discovery rule to a false arrest claim). For the reasons explained above, the fraudulent concealment doctrine does not apply, either.

Plaintiff's false arrest and imprisonment claims are time-barred and should be dismissed with prejudice. *See Bennett*, 2001 WL 569749, at *3. As a derivative claim, his conspiracy claim is also time-barred and should be dismissed with prejudice. *See Siltek Grp. Texas, LLC v. A&A Landscape & Irrigation LP*, No. 05-17-00042-CV, 2018 WL 3342691, at *4 (Tex. App.—Dallas 2018, no pet.) (mem. op.) ("Without an underlying tort, there can be no independent liability for civil conspiracy.").

### 3. Malicious Prosecution

Defendants argue for the first time in their reply that to the extent that Plaintiff asserts a state law claim for malicious prosecution, it is time-barred. (doc. 19 at 2.) The purpose of filing a reply brief "is to rebut the nonmovant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *See Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239-40 (N.D. Tex. 1991). Defendants did not seek leave to introduce new arguments in their reply. A movant is not ordinarily permitted to make new arguments in a reply because such actions deprive the non-movant of a meaningful opportunity to respond. *See id.*

Because Plaintiff did not have a meaningful opportunity to respond to the new timeliness argument, it is not considered. *Pennsylvania Gen. Ins. Co. v. Story*, No. 3:03-cv-0330-G, 2003 WL 21435511, at *1 (N.D. Tex. June 10, 2003) ("[A] court generally will not consider arguments raised for the first time in a reply brief."); *see, e.g., Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins. Co.*, No. 3:14-CV-3398-L, 2015 WL 5613336 (N.D. Tex. Aug. 25, 2015), *rec. accepted* No. 3:14-CV-3398-L, 2015 WL 5666727 (N.D. Tex. Sept. 24, 2015) (declining to consider new arguments made for the first time in a reply brief).

## V.   NON-COGNIZABLE CLAIMS

Defendants contend that because the Texas Penal Code does not create a private cause of action, Plaintiff's "penal-based" claims, including his police misconduct and dereliction of duty claims, should be dismissed as non-cognizable. (doc. 15 at 4.)

"Under Texas law, the fact that a criminal statute is enacted 'does not necessarily mean that [courts] may recognize a civil cause of action predicated upon that statute.'" *Reliable Ambulance Serv., Inc. v. Mercy Hosp. of Laredo*, No. 04-02-00188-CV, 2003 WL 21972724, at *3 (Tex. App.—San Antonio 2003, pet. denied) (quoting *Reeder v. Daniel*, 61 S.W.3d 359, 362 (Tex. 2001)). For a private right of action to exist under a criminal statute, there must be "a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Cort v. Ash*, 422 U.S. 66, 79 (1975), *overruled in part by Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979); *see also Suter v. Artist M.*, 503 U.S. 347, 363 (1992) (the party seeking to imply a private right of action bears the burden to show that Congress intended to create one); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Travina v. Univ. of Texas*, No. A-21-

CV-01040-RP, 2022 WL 1308828, at *4 n.4 (W.D. Tex. May 2, 2022) (holding that plaintiff "may not bring a claim against [defendant] for a violation of a state criminal statute") (citing *Williams v. Cintas Corp.*, No. 3-07-CV-0561-M, 2007 WL 1295802, at *2 (N.D. Tex. Apr. 10, 2007), *report and recommendation adopted*, 2007 WL 1300780 (N.D. Tex. May 2, 2007)); *Coleman v. Cardona*, No. 3:19-CV-2417-D, 2021 WL 1169149, at *2 (N.D. Tex. Mar. 29, 2021), *aff'd*, No. 21-10436, 2021 WL 3729653 (5th Cir. Aug. 23, 2021) (citing *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990)) ("Nor does a citizen have a constitutional right to have someone criminally prosecuted.").

Here, Plaintiff alleges in his amended petition that "[a]ctions seen by and through Defendants are proven" to violate the Texas Penal Code. (doc. 10 at 3-4, 18-20, 23, 25-26, 28-29.) His repeated vague and conclusory allegations are insufficient to meet this burden. *See Tummel v. Milane*, No. 7:18-CV-339, 2019 WL 366708, at *7 (S.D. Tex. Jan. 30, 2019), *aff'd*, 787 F. App'x 226 (5th Cir. 2019) (affirming the district court's dismissal of plaintiffs' claims under the Texas Penal Code because "it is a criminal statute and provides no indication this was intended to provide a private right of action"); *Dunlap v. City of Fort Worth*, No. 4:18-CV-00238-O-BP, 2020 WL 90773, at *7 (N.D. Tex. Jan. 8, 2020) (dismissing plaintiff's Texas Penal Code claims, because she "does not claim that Congress has given her the right to do so"). Plaintiff does not reference or identify any other state or federal law as a basis for these claims. Because they are penal-based or non-cognizable, they should be dismissed with prejudice for failure to state a claim.

## VI.    TEXAS TORT CLAIMS ACT

Defendants also argue that Plaintiff's claims for false or wrongful arrest and wrongful

imprisonment should be dismissed on grounds of immunity under the Texas Tort Claims Act. (doc. 15 at 4-5.)

The TTCA "provides a limited waiver of sovereign and governmental immunity for certain tort claims, 'allowing suits to be brought against governmental units only in certain, narrowly defined circumstances.'" *Dorward v. Ramirez*, No. 3:09-CV-0018-D, 2009 WL 2777880, at *13 (N.D. Tex. Aug. 28, 2009) (quoting *Tex. Dep't of Crim. J. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)). "A [city] . . . as a political subdivision of the State, falls within the parameters of the TTCA. *Harris Cty., TX v. Cabazos*, 177 S.W.3d 105, 109 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(B)); *see also Holland v. City of Houston*, 41 F.Supp. 678, 710 (S.D. Tex. 1999) ("Cities, as political subdivisions of the State of Texas, come within the parameters of the Act.") (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(B)). This "waiver of immunity constitutes the 'only . . . avenue for common-law recovery against the government' on a tort theory." *Id.* (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008)).

The TTCA's limited waiver of governmental immunity for certain tort claims expressly does not apply to claims "arising out of assault, battery, *false imprisonment, or any other intentional tort*." Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (emphasis added); *see also Dorward*, 2009 WL 2777880, at *13 (citing *Tex. Dep't of Crim. J.*, 51 S.W.3d at 587); *Swiat v. City of Fort Worth*, No. 4:10-CV-354-A, 2011 WL 2559637, at *5 (N.D. Tex. June 28, 2011) (considering the scope of § 101.057(2)). Along with Plaintiff's claim for false imprisonment, his claims for false arrest and malicious prosecution are all intentional torts under Texas law. *See Humphreys v. City of Ganado, Tex.*, 467 F. App'x 252, 256–57 (5th Cir. 2012) (identifying

malicious prosecution as an intentional tort); *T.R. Hoover Cmty. Dev. Corp. v. City of Dallas*, No. 3:06-CV-2148-O, 2009 WL 256000, at *2 (N.D. Tex. Feb. 3, 2009) (identifying tortious interference as an intentional tort); *Jimenez v. Conley Magazine, LLC*, No. SA-06-CA-1013-XR, 2006 WL 3716649, at *2 (W.D. Tex. Dec. 14, 2006) (recognizing that invasion of privacy is an intentional tort); *Jackson v. Sheriff of Ellis Cty.*, 154 F. Supp. 2d 917, 921 (N.D. Tex. 2001) (stating that intentional infliction of emotional distress is an intentional tort).  Accordingly, the City has immunity from Plaintiff's intentional tort claims under the TTCA, and his claims against it should be dismissed for failure to state a claim.  *Thomas*, 294 F. Supp. 3d at 614–15 (finding that intentional tort claims against a county should be dismissed under Rule 12(b)(6) based on the TTCA); *see Hammers*, 2015 WL 3948169, at *3 (recommending dismissal of claims against a government official in her official capacity under the TTCA based on governmental immunity).

Further, under the election-of-remedies provisions of the TTCA, a plaintiff who sues under the TCCA must elect between suing a government unit and suing an employee of that unit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106. If he sues the governmental unit, the suit "constitutes an irrevocable election" by him and "bars any suit or recovery [by] him against any individual employee of the governmental unit regarding the same subject matter." Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a). Because Plaintiff has made an irrevocable election of remedies by suing the City and is barred from suing Detective in his individual capacity regarding the same subject matter under the TTCA, his remaining state-law intentional tort claims against Detective, including any malicious prosecution claim, should also be dismissed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a), (e); *Thomas*, 294 F. Supp. 3d at 614

(recommending dismissal of claims against governmental employees under the TTCA where the plaintiff also sued their county employer).

## VII.    MUNICIPAL LIABILITY

Municipalities, including cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Jones v. City of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however. *Piotrowski*, 237 F.3d at 578 (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). Official municipal policy includes the decisions of the government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Monell*, 436 U.S. at 691-95. "Official policy" is defined as:

1.     A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.     A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to

28

the governing body of the municipality or to an official to whom that body has
delegated policy-making authority. Actions of officers or employees of a
municipality do not render the municipality liable under § 1983 unless they
execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v.*

*City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

"The description of a policy or custom and its relationship to the underlying

constitutional violation...cannot be conclusory; it must contain specific facts." *Spiller v. City of*

*Texas City, Police Dept's*, 130 F.3d 1662, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*,

957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must

contain either direct allegations on every material point necessary to sustain recovery...or contain

allegations from which an inference fairly may be drawn that evidence on these material points

will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

Here, Plaintiff makes conclusory allegations of "custom policies … not in line with the

good of our society", "customary actions", and "customary policies created, to falsify evidence,

tamper with/destroy evidence, provide a biased investigation, and to file charges when there was

no probable cause, against an innocent citizen." (*See* doc. 18 at 4.) He never specifically

identifies a custom or policy, however. In addition, he points to no other incidents to support his

claims, or to show a persistent widespread practice. A single incident is insufficient to infer an

official policy or custom. *See World Wide Street Preachers Fellowship v. Town of Columbia*,

591 F.3d 747, 753-54 (5th Cir. 2009); *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th

Cir. 2009) (explaining that, to show custom that fairly represents municipal policy, the plaintiff

must show "sufficiently numerous prior incidents" as opposed to "isolated instances") (citations

omitted); *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581; *see also Blakely v. Andrade*, 360 F.3d 453, 488 (N.D. Tex. Jan. 23, 2019) ("Because Husband essentially relies on a single incident plus generalities and conclusions, he has not sufficiently alleged an official policy or custom for municipal liability, and his claims against the County for violations of the Fourth and Fourteenth Amendments should be dismissed *sua sponte*.")).

Because Plaintiff has not adequately pleaded the existence of a policy or custom, his § 1983 claims against the City should be dismissed.

## VIII.   QUALIFIED IMMUNITY

Detective moves to dismiss Plaintiff's remaining claims against him based on qualified immunity. (doc. 15 at 4-5.)

A governmental employee who is sued under Section 1983 may assert the affirmative defense of qualified immunity.  *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992).  Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The doctrine protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation.  *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

"In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry.  The first prong entails consideration of whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right.  *Saucier v. Katz*,

533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 235–36 (2009).  Under the second prong, courts determine whether "'the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.'" *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoting *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005)).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. at 202.  It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to the case at hand.[8]  *Pearson*, 555 U.S. at 236; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) ("*Saucier's* rigid 'order of battle' . . . is now advisory.").  If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity.  *Lytle*, 560 F.3d at 410.

For purposes of qualified immunity, "clearly established," means that the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Therefore, the constitutional right must already be clearly established at the time of the challenged conduct.  *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014).  Being clearly established in an abstract sense generally gives insufficient notice—in most cases, the law should be clear in a more particularized sense related to the specific context in which the officer is acting.  *Brosseau v.*

---

[8] Current law applies to the first prong, but "the law at the time of the incident" applies to the second prong.  *See Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008).

*Haugen*, 543 U.S. 194, 198–99 (2004); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (recognizing that when the constitutional violation is obvious, a materially similar case is unnecessary to find the law clearly established). Because the primary concern is fair notice to the officer, the law can be clearly established in some cases "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope*, 536 U.S. at 740 (citation omitted).

A.    **Fourth Amendment**

Plaintiff claims that Detective violated his Fourth Amendment right by causing him to be arrested without probable cause. (*See*, *e.g.*, doc. 10 at 8, 9, 21.)

The Fourth Amendment protects the right to be secure from unreasonable seizures. U.S. Const. amend. IV. To state a claim under Section 1983 for false arrest, Plaintiff "must sufficiently allege (1) that he was arrested, and (2) the arrest did not have the requisite probable cause." *Rhodes v. Prince*, 360 F. App'x 555, 558 (5th Cir. 2010) (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004). Accordingly, to establish a constitutional violation of his constitutional right to be free from false arrest and from unreasonable seizure, he must show that there was no probable cause for his arrest. *See Haggerty*, 391 F.3d at 655-56; *see also Clark v. Thompson*, 850 F. App'x 203, 210 (5th Cir. Mar. 9, 2021) ("The 'constitutional torts' of false arrest, unreasonable seizure, and false imprisonment also require a showing of *no probable cause*.") (quoting *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001)) (emphasis in original). "If [his] arrest was supported by probable cause, [his] claims under the Fourth Amendment fail before [Detective's] qualified immunity defense ever rears its head—though the existence of

32

probable cause also entitles [Detective] to qualified immunity." *Velazquez v. City of Westwego*, 531 F.Supp.3d 1142, 1157 (E.D. La. 2021) (citing *Marks v. Hudson*, 933 F.3d 481, 483 (5th Cir. 2019)).

Here, Plaintiff's pleadings suggest that his arrest was pursuant to a warrant. (*See* doc. 10 at 7). "[I]f facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citation omitted); *see also Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004). "But sometimes there is more to the analysis; the independent-intermediary doctrine is not absolute." *Anokwuru v. City of Houston*, 990 F.3d 956, 963-64 (5th Cir. 2021). An officer can still be liable if the officer "deliberately or recklessly provides false, material information" or "makes knowing and intentional omissions that result in a warrant being issued without probable cause." *Melton v. Philips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc) (emphasis omitted) (discussing *Franks v. Delaware*, 438 U.S. 154 (1978)); *see also Hart v. O'Brien*, 127 F.3d 424, 434 (5th Cir. 1997).

Under *Franks*, a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes a "false statement knowingly or intentionally, or with reckless disregard for the truth" and (2) "the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155-56. Material omissions are treated essentially like claims of material misstatements. *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980). "An omission may amount to improper government conduct only if the omission is material and the defendant shows that the affiant excluded the material information 'with the intent to mislead the magistrate.'" *United States v. Torres*, 694 F. App'x 937, 944 (5th Cir. 2017), *cert. denied sub*

33

*nom. Tampia v. United States*, 138 S. Ct. 341 (2017). To determine that a false statement or omission was necessary to the finding of probable cause, *Franks* requires consideration of the faulty affidavit as if those errors and omissions were removed. "[The Court] then must examine 'the corrected affidavit' and determine whether probable cause for the issuance of the warrant survives the deleted false statements and material omissions." *See Franks*, 438 U.S. at 156.

Here, Plaintiff alleges that Detective erred by: (1) not getting his side of the story before getting the arrest warrant (doc. 10 at 6); (2) "falsifying a supplement to a police report" (*id.* at 7); (3) "modifying audio between Plaintiff and [Detective]" and not providing the DA with the original audio (*id*. at 9); (4) not providing the "conversation" Plaintiff had with Detective Bowers or "audio/video" of the interview with Ms. Anna T. Melton (*id.*); (5) using less than credible "witnesses to apply for arrest warrants" (*id.* at 7.); and (6) conducting a biased investigation and profiling Plaintiff because of his military background (*id.* at 12.)   He does not tie these allegations to the affidavit that apparently secured his arrest warrant. He does not allege, for example, that the affidavit contained the same falsification that was allegedly in the police report supplement, or that Detective omitted from the affidavit the fact that he "modified" an audio recording or arrested Plaintiff without interviewing him (assuming that this would be material). He has not shown that there were materially false statements or omissions in the affidavit underlying his arrest warrant.

Nor has he adequately alleged that the affidavit would fail to establish probable cause after excising any allegedly false representations and including alleged material omissions. He has not alleged what was in the affidavit, including the specific facts upon which a judge apparently found probable cause. Without that information, he has not shown a *Franks* violation

that would nullify an independent intermediary's determination of probable cause. Plaintiff has not pleaded sufficient facts to show that he was arrested without probable cause.

## B. **Fourteenth Amendment**

Detective is also entitled to qualified immunity on Plaintiff's cognizable and timely due process Claims. The Fifth Circuit has concluded that the Fourteenth Amendment guarantees a "due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015), *cert. granted*, *judgment vacated sub nom. Hunter v. Cole*,---U.S.---, 137 S. Ct. 497 (2016), and *opinion reinstated in part*, 905 F.3d 334 (5th Cir. 2018). To succeed on a fabrication-of-evidence claim under the Fourteenth Amendment, Plaintiffs must show (1) the officers fabricated the evidence (2) for the purpose of falsely obtaining a charge and (3) that the evidence influenced the decision to charge. *Id.* at 777.

Plaintiff claims that Detective "modified" an audio recording of a conversation that he had with him. However, he never explains how the recording was modified. Even liberally construed, his allegations are not sufficient to support a plausible claim that the "modified" recording influenced the decision to charge him. He has failed to allege a constitutional violation, and Detective is entitled to qualified immunity on this claim.

Plaintiff also seems to claim that Detective violated his due process rights under *Brady* by not providing the original, unmodified recording to the DA. (doc. 10 at 9.) "[T]o establish a *Brady* violation, a defendant must make the following showing: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or invertedly; and prejudice

must have ensued.'" *Powell v. Quarterman*, 536 F.3d 325, 335 (5th Cir. 2008) (quoting *Stickler v. Green*, 527 U.S. 263, 281-82 (1999)).

Here, Plaintiff's criminal proceedings did not result in a conviction. It is not clearly established law that a *Brady* violation occurs in the absence of a conviction. *See*, *e.g*, *Jean v. Collins*, 221 F.3d 656, 663 (4th Cir. 2000), *cert denied*, 531 U.S. 1076 (2001); *Morgan v. Getz*, 166 F.3d 1307, 1310 (10th Cir. 1999); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998); *McKune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988); *see also Babiker v. City of New Orleans*, CIVIL ACTION NO. 08-767, 2009 WL 10680158, at *4 (E.D. La. May 4, 2009) (recognizing that, although the Fifth Circuit had not addressed the issue, most circuits have found that a *Brady* claim requires a conviction).

In conclusion, Plaintiff has not pleaded sufficient facts to show a violation of his constitutional rights.

## IX.    *SUA SPONTE* DISMISSAL

"District courts may, for appropriate reasons, dismiss cases *sua sponte*." *Carter v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) (collecting cases). A court may *sua sponte* dismiss a plaintiff's claims under Rule 12(b)(6) for failure to state a claim "as long as the procedure employed is fair;" this requires notice of the intent to dismiss and an opportunity to respond. *See id.* at 498 (citing *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014)). "Pre-dismissal notice and opportunity to respond are not needed 'if the plaintiff has [already] alleged his best case," which includes "(1) repeatedly declar[ing] the adequacy of that complaint in ... response to [the] defendant's motion to dismiss and (2) refus[ing] to file a supplemental complaint even in the face of a motion to dismiss." *See id.* at 498 n.1 (citing *Brown v. Taylor*,

829 F.3d 365, 370 (5th Cir. 2016)) (internal quotations omitted). The recommendation of a United States Magistrate Judge that a case be dismissed *sua sponte* with an opportunity for the plaintiff to object to it satisfies this requirement. *See Alexander v. Trump*, 753 F. App'x 201, 208 (5th Cir. 2018) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)).

## A.  Federal Malicious Prosecution

To the extent that Plaintiff asserts a federal malicious prosecution claim, under established Fifth-Circuit precedent, there is no "freestanding constitutional right to be free from malicious prosecution." *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003); *see also Anokwuru v. City of Houston*, 990 F.3d 956, 964 (5th Cir. 2021) (same); *Morgan v. Chapman*, 969 F.3d 238, 245 (5th Cir. 2020) (same). Any freestanding federal malicious prosecution claim should be dismissed.

## B.  Remaining Due Process Claims

Although Defendants moved to dismiss Plaintiff's remaining due process claims as time-barred, it is not necessary to reach this affirmative defense because the claims are not cognizable.

### 1.  Fifth Amendment

Plaintiff suggests that Defendants violated his right to due process under the Fifth Amendment. (doc. 10 at 23.) The Fifth Amendment does not apply to non-federal actors like the defendants in this case. *See, e.g.*, *Pack v. Collier*, Civil Action No. 7:20-cv-00157-M-BP, 2022 WL 1008038, at *4 (N.D. Tex. Mar. 9, 2022), *rec. accepted* 2022 WL 1004243 (N.D. Tex. Apr. 4, 2022) (noting that the "Fifth Amendment's Due Process Clause applies only to a federal official's actions") (citing *Hill v. Walker*, 718 F. App'x 243, 247 (5th Cir. 2018) (quoting *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000); *Martinez-Rivera v. Sanchez Ramos*, 498

F.3d 3, 8 (1st Cir. 2007) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001)).

The Fifth Amendment claims should be dismissed on that basis *sua sponte*.

       2.     *Failure to Investigate*

     Plaintiff claims that Defendants violated his right due process rights by failing to "fully investigate the charges" against Plaintiff. (doc. 10 at 23.) Encompassed in this claim is the more specific allegation that Detective refused to interview Plaintiff and allow him to present "his side of the story." (doc. 23 at 10.)

     There is no due process right to an investigation, however, much less an adequate one. *See*, *e.g.*, *Rolen v. City of Brownfield, Tex.*, 182 F. App'x 362, 364 (5th Cir. 2006) ("The plaintiffs next assert that defendants violated their rights by failing to investigate an alleged sexual assault on April Rolen. Failure to investigate or prosecute an offense does not give rise to § 1983 liability." ) (citing *Piotrowski*, 237 F.2d at 1278); *see also Ying Li v. City of New York*, 246 F.Supp.3d 578, 633, n. 55 (E.D.N.Y. 2017) ("Whether the alleged failure to investigate gives rise to a constitutional claim is far from clear. Courts have explained that failure to pursue a particular investigative path does not give rise to an independent due process claim apart from claims of false arrest, malicious prosecution, or violation of right to a fair trial.") (citing *Blake v. Race*, 487 F.Supp.2d 187, 212 n. 18 (E.D.N.Y 2007) (rejecting an independent due process claim of failure to investigate and finding the allegations of failure to investigate should be regarded as part of plaintiff's false arrest and malicious prosecution claims); *Stokes v. City of New York*, No. 5-CV-0007, 2007 WL 1300983, at *6 (E.D.N.Y. May 3, 2007) ("[I]t is well-settled that there is no independent claim for a police officer's purported failure to investigate; rather, such allegations are considered, to the extent they are relevant, within the framework of claims for

false arrest, false imprisonment, or malicious prosecution."); *Newton v. City of New York*, 566 F.Supp.2d 256, 278 (S.D.N.Y. 2008) ("[T]here is no constitutional right to an adequate investigation. Accepting [plaintiff's] allegations as true, his rights were violated as a result of the malicious prosecution, not the failure to investigate."); *McCaffrey v. City of New York*, No. 11-1636, 2013 WL 4940235, at *5 (S.D.N.Y. Feb. 7, 2013) ("[A] 'failure to investigate' is not independently cognizable as a stand-alone claim.").

      3.  *Miranda* violation

      Finally, Plaintiff claims that Detective's refusal to interview him if his attorney was there violates his rights under *Miranda* to have "counsel present during questioning." (doc. 10 at 27.) The Supreme Court recently held that a *Miranda* violation is not actionable under § 1983, however. *See Vega v. Tekoh*, 142 S. Ct. 2095, 2108 (2022). The *Miranda* claim should be dismissed *sua sponte* on the basis that it is not cognizable.

**C.  Remaining Defendant**

      Although Plaintiff also names WPD as a defendant, neither it nor Defendants have moved to dismiss the claims against it. (*See* doc. 14 at 1.)

      A plaintiff may not bring a civil rights claim against a servient political agency or department unless such agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). Unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself. *Id.* at 313. "Plaintiff fail[s] to show that [City] granted [WPD] the capacity to sue or be sued." *Clayton v. Garland Police Dept.*, No. 3:09-CV-2048-D ECF, 2010 WL 2640258, at *1 (N.D. Tex. May 11, 2010), *rec*

39

*accepted*, 2010 WL 2605258 (N.D. Tex. June 28, 2010) (dismissing suit against GPD because it is not a jural entity). In fact, it is well-settled that the WPD is not a jural entity subject to suit. *White v. Ellis Cnty. Commissioners Court*, No. 3:19-CV-3017-M-BH, 2021 WL 2446200, at *3 (N.D. Tex. May 19, 2021), *rec. adopted*, 2021 WL 2435352 (N.D. Tex. June 15, 2021), appeal filed Mar. 25, 2022; *Steele v. Partington*, Nol 3:16-CV-360-K, 2017 WL 6453338, at *2 (N.D. Tex. Nov. 27, 2017) (Waxahachie Police Department is a non-jural entity and cannot be sued under § 1983), *rec. adopted*, 2017 WL 6406629 (N.D. Tex. Dec. 14, 2017).

Plaintiff's claims against WPD should be dismissed *sua sponte*.

## X.    OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Thomas v. Texas*, No. 3:17-CV-0348-N-BH, 2017 WL 11496979, at *2 (N.D. Tex. May 19, 2017). A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See id.* Nonetheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint. *Rodriguez*, 66 F.3d at 97. Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has amended his complaint once as a matter of course, and his response

has been considered an amendment.  It is apparent from the face of his pleadings that his claims are time-barred, non-cognizable, or fail to state a claim. Because he appears to have pleaded his best case, no further opportunity to amend is warranted.

## XI. RECOMMENDATION

Plaintiff's motion to remand should be **DENIED**. Defendants' motion to dismiss should be **GRANTED**, and all of Plaintiff's claims against Defendants should be **DISMISSED with prejudice** for failure to state a claim.

**SO RECOMMENDED** on this 8th day of August, 2022.

IRMA CARRILLO RAMÍREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE